UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NATASHA DALLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV592 CDP |
| | ) | |
| AMERICAN GENERAL LIFE AND | ) | |
| ACCIDENT INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Natasha Dallas applied for a life insurance policy on her father's life when she was employed as an agent for defendant American General Life and Accident Insurance Company. She set up her initial premium payment as an automatic withdrawal from her bank account, but the initial withdrawal failed. Dallas's father then died, after which Dallas made the initial premium payment. After American General refused her request for coverage because the initial premium was not paid until after the insured's death, Dallas brought this suit. The parties have filed cross-motions for summary judgment. Because the undisputed evidence demonstrates that the insurance policy does not provide coverage if the initial premium has not been paid, I conclude that the policy was not effective at the time of Walker's death. I will therefore grant defendant's motion for summary judgment as to all claims.

## Background

From October 26, 2009 through November 29, 2010, plaintiff Dallas was employed as an insurance agent for American General. On May 25, 2010, Dallas applied for a life insurance policy on her father, Alvin Walker's, life. It was a ten-year, term life insurance policy with a total benefit of $100,000. Dallas was listed as the beneficiary, and the monthly premium was $142.75, although it was increased to $196.30 on June 7, 2010. The policy was issued with a policy date of June 28, 2010.

As part of the application, Dallas executed an Automatic Bank Check authorization agreement (ABC agreement). This permitted American General to debit the monthly premium payment from a designated bank account. On the form, Dallas reported her checking account number incorrectly, and she also listed her father as the account holder. Because the account number was wrong, the initial ABC premium payment failed, and American General sent notification of this failure to Walker (as the listed account holder) on July 4, 2010. Dallas learned about the failed initial premium payment on July 13, 2010, and Walker died of a heart attack on July 29, 2010.

Dallas submitted a claim under the life insurance policy to American General on August 2, 2010. She then sent one month's payment to American General on August 20, 2010, and she sent another month's payment on August 21,

2010. On November 5, 2010, American General refunded those payments with an explanation that premium payments are not accepted after the insured's death, and American General formally denied her claim for benefits on January 21, 2011.

As a basis for its denial of the claim, American General explained that a policy does not become effective until the first premium payment is made, and that it is their policy not to accept premium payments after an insured's death. Dallas, as an agent for American General, had access to internal documents regarding the due dates for premium payments. Her computer program showed a "PNO lapse date" of August 27, 2010 on one document and August 29, 2010 on another. She argues that this lapse date allowed the initial premium to be paid at any time before that deadline, with the policy then becoming effective as of the original issue date. A representative of American General, however, testified during a deposition that this lapse date merely signified the time by which an applicant could make an initial payment after the first attempt failed, without having to go through the entire application process again, and that, regardless, the policy would not become effective until the date on which the initial premium payment was made.

## The Insurance Policy

Several provisions of the insurance policy are at issue regarding the requirements for the initial premium payment. The policy lists the named insured

as Alvin Walker, and the face amount of the policy is $100,000.  It also states that the policy date is June 28, 2010.  The policy explains that the "policy date" is used "to determine premium due dates, Policy years and Policy anniversaries."

Under the section of the policy entitled "Paying Premiums," the policy states: "The initial premium is due on the policy date. . . . Each premium must be paid on or before its due date."  It also contains two provisions regarding missed payments:

> Grace Period: If a premium, *other than the Initial Premium*, has not been paid on its due date, Your Policy will remain in force for a Grace Period of 31 days (emphasis added).

> Lapse: If any premium is not paid before the end of its Grace Period, this Policy will lapse.  The date of lapse is the date on which the unpaid premium was due.  Lapse will terminate this policy unless it is later reinstated.

The policy also contains a general provision stating that "[t]his contract is made in consideration of Your application and the payment of premiums as provided."

In addition to the insurance contract itself, the terms in the ABC authorization agreement are also part of the policy.  The agreement sets out the terms for making payments by automatic debit and states: "I (we) understand that no insurance applied for will become effective unless the Company issues a policy from the application for this policy, the first premium is paid, and any other terms and conditions of the policy are met."

**Discussion**

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party, here plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).

Under Missouri law, which applies to this diversity case, the rules governing the interpretation of insurance polices are well settled. *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. 1998) (en banc). A court must apply the general rules of contract construction when interpreting an insurance policy, because insurance policies are contracts. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007) (en banc). When interpreting a contract, a court must give the contract's terms their plain and ordinary meaning, unless a term is ambiguous. *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo.

1997) (en banc); *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301 (Mo. 1993) (en banc). A term's plain and ordinary meaning is the meaning that an average layperson would give the term. *Farmland Indus., Inc.*, 941 S.W.2d at 508. In addition, a court "should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009). Finally, in interpreting an insurance contract, the court must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008).

A term is ambiguous only if the terms are "reasonably and fairly open to different constructions, and there is duplicity, indistinctness, or uncertainty of meaning." *Miller's Classified Ins. Co. v. French*, 295 S.W.3d 524, 526 (Mo. Ct. App. 2009) (citations and internal quotation marks omitted). When an ambiguity exists in an insurance policy, the court must interpret the policy in favor of the insured. *Todd*, 223 S.W.3d at 160. If, however, the policy is unambiguous, the court must enforce the contract's terms as written. *Id.*

<u>Coverage Under the Life Insurance Policy</u>

Generally, to establish coverage under a life insurance policy under Missouri law, the insured must show: "(1) issuance and delivery of the policy; (2) payment of the premium; (3) a loss caused by a peril insured against; and (4)

- 6 -

notice and proof of loss to the insurer." *Valentine-Radford, Inc.v. Am. Motorists Ins. Co.*, 990 S.W.2d 47, 51 (Mo. Ct. App. 1999). The element at issue in this case is the payment of the premium, specifically whether it must be paid before the insured's death in order for the policy to become effective.

The language in the life insurance policy at issue is unambiguous: the policy could not become effective until the initial premium was paid. The policy itself states that the "initial premium is due on the policy date," and that "[e]ach premium must be paid on or before its due date." Though the policy provides for a grace period of thirty-one days and corresponding lapse date for missed premium payments, those provisions explicitly exclude the initial premium payment. Thus, by the terms of the insurance policy itself, the initial premium must be paid on the policy date, which was June 28, 2010 in this case. There is not an exception or grace period for the requirement of an initial premium due date by the clear and unambiguous terms of the policy. Further, the policy states that "[t]his contract is made in consideration of your application and the payment of premiums as provided." Thus, the policy anticipates premiums being paid – including payment of the initial premium on or before the policy date – as a requirement in order for the policy to become effective.

Though plaintiff is correct that it is possible under Missouri law to issue a policy on credit rather than upon full payment of the initial premium, *see, e.g.*,

*Chailland v. M.F.A. Mut. Ins. Co.*, 375 S.W.2d 78, 81 (Mo. 1964), there is no evidence that such credit was issued in this case. The plaintiff argues that the ABC system was established for the purpose of selling policies on credit, but the terms of the ABC agreement expressly refute that argument. The agreement provided for an automatic debit to occur on the 28th of each month, which is the same as the "policy date" on the contract. Thus, it contemplated payment on the date of the policy's original issuance, so it did not purport to grant any coverage before that date. Furthermore, the agreement states that "no payment shall be deemed to have been made unless and until the Company receives actual payment in its Home Office," and that "[u]se of the ABC plan shall in no way alter or amend the provisions of the policy(ies) as to premium payment." Therefore, contrary to plaintiff's arguments, the ABC plan did not alter the policy's requirement that payment must be made before the policy becomes effective. The ABC plan merely provided an alternative method of payment, without altering any payment requirements.

The plaintiff further argues that even if the policy could not become effective until the first premium payment, such payment was made before the company's internal lapse date, so the policy became effective as of its issue date. Therefore, plaintiff claims that because the company has no established policy as to whether it will accept initial premium payments after an insured's death, it

should provide coverage under this policy. But by the terms of the policy itself, American General states that it will pay insurance benefits only if the insured dies "while this Policy is in force." As explained above, the policy would not have become effective until the plaintiff paid the initial premium payment, which happened after the insured had already died. Therefore, the policy was not in force when the insured died, so no benefits are due under the terms of the policy.[1]

Furthermore, as a basic matter of contract law, it is unreasonable to assert that a life insurance policy may be taken out for a life that is no longer in existence. The subject matter of a life insurance policy is the life of the individual to be insured by that policy; without a life in existence at the time the contract comes into effect, there is nothing to which the contract applies and thus no valid contract. *See Cantu v. Jackson Nat'l Life Ins. Co.*, 579 F.3d 434, 441 (5th Cir. 2009) (interpreting Texas law and stating that "[t]he essential foundation of a life insurance policy is the life of a human being" (citation and internal quotation marks omitted)); *Rhodus v. Kansas City Life Ins. Co.*, 137 S.W. 907, 909 (Mo. Ct. App. 1911) ("[T]here can be no valid insurance upon the life of one already dead

---

[1]Plaintiff relies heavily on the policy's language that coverage is not effective "unless" the initial premium is paid, rather than "until" the initial premium is paid. Although, in theory, there could be a difference between the use of "unless" or "until," it is clear from the context of this case that this distinction makes no difference here. The policy unambiguously stated that it would not become effective "unless" the initial premium was paid, and that premium must have been paid while the insured was alive. Therefore, regardless of whether the policy used "unless" or "until," its language definitively establishes that the policy did not become effective in this case because the insured had already died when the initial premium was paid.

at the time when the contract becomes complete." (citation and internal quotation marks omitted)). Therefore, because the policy could not have come into existence until payment of the initial premium, and because such payment was not made until after the insured had died, the plaintiff is not entitled to recovery under the terms of the policy.

The plaintiff alternatively argues that, even if the terms of the policy do not provide coverage, American General has waived the provisions limiting the normal grace period or should be estopped from enforcing those terms, as American General instead established a sixty-day period during which the initial premium payment may be made in the form of its PNO lapse date. Regardless of the true definition and usage of the PNO lapse date, since the parties dispute its significance, the plaintiff may not invoke arguments of either waiver or estoppel in this case. As stated above, the life insurance policy in this case never came into effect, due the nonpayment of the initial premium before the insured's death. Under Missouri law, "[w]hile waiver and estoppel may be applied to the provisions of existing insurance contracts, these doctrines cannot be used to create a contract for insurance where none exists." *Wareham v. Am. Family Life Ins. Co.*, 922 S.W.2d 97, 100 (Mo. Ct. App. 1996) (citing *State Farm Mut. Auto. Ins. Co. v. Hartford Accident & Indem. Co.*, 646 S.W.2d 379, 381 (Mo. Ct. App. 1983)). Because the contract never came into existence, there is no subject matter to which

the doctrines of waiver and estoppel may be used. Therefore, plaintiff's alternative arguments also fail to demonstrate that coverage is provided under this life insurance policy.

Vexatious Refusal Claim

In addition to her breach of contract claim, Dallas has asserted a claim for vexatious refusal to pay pursuant to § 375.420 of the Missouri Revised Statutes. To establish a claim for vexatious refusal to pay, Dallas must prove: (1) she had an insurance policy with American General; (2) American General refused to pay; and (3) American General's refusal was without reasonable cause or excuse. *See Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006). As a matter of law, if there is no valid insurance policy and thus no duty on the insurance company to provide coverage, there can be no liability for vexatious refusal to pay. *See Valentine-Radford, Inc. v. Am. Motorists Ins. Co.*, 990 S.W.2d 47, 54 (Mo. Ct. App. 1999) (holding that insurer was entitled to summary judgment on a vexatious refusal to pay claim where there was no duty to defend). Because the insurance policy at issue in this case never became effective, Dallas cannot prove the first element of a claim for vexatious refusal to pay: that she had a policy with American General. Therefore, American General is entitled to summary judgment on plaintiff's vexatious refusal to pay claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#32] is GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment [#28] is DENIED.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of February, 2012.